W. G. ADKINS, *et al.*, v. D. J. DOOLEN, *et al.*

*Original Proceedings in Mandamus.*

ACTION brought February 3, 1880, by *Adkins*, an elector of Labette county, who sued as well for himself as for all others similarly situated and in like manner interested, praying that an alternative writ of mandamus might be issued and directed to *D. J. Doolen, A. N. Russell,* and *G. W. Shick,* to compel them, as the board of commissioners of said county, to receive and estimate the names and petitions of the plaintiffs, while considering a certain petition by the legal electors thereof for an order for an election to relocate the county seat of Labette county, although the names of the plaintiffs be not returned on the last assessment rolls of the township assessors of that county. February 5, 1880, an alternative writ was issued, and addressed to the said defendants, the command thereof being:

"That you do forthwith, upon the coming to you of this

writ, proceed to consider the whole of said petition of the 2,521 legal electors of said county, so presented and being considered by you, and that in so considering the same you do count and allow the names and petitions of the whole number of legal electors joining in the petition by signing the same, whether their names appear upon the last assessment rolls of the several township assessors in the county, or not; and that you, in proceeding to ascertain from the said last assessment rolls of the township assessors the number of the legal electors of the county, do exclude from the number and count of the names upon said rolls, all names of copartnerships, to the extent that the names of the copartners and members thereof appear elsewhere on said rolls; also the names of all corporations, of all minors, of all non-residents of the county, of all females, of persons known to be dead, and that the same name, though appearing on different rolls, be by you counted and allowed but once: or that you appear before the justices of the supreme court aforesaid, at the court rooms in the capitol at Topeka, on the 24th day of February, inst., at 10 o'clock A. M. of that day, to show cause why you have not done so. And have you then and there this writ, with your return thereon of having done as you are hereby commanded."

The defendants duly appeared, and filed a motion to quash the foregoing writ. The opinion herein was filed April 27, 1880.

*Ayres & Kimball*, for plaintiffs:

1. The general right of petition is one of the fundamental rights of the citizen in a republican government. (Potter's Dwarris, 536.) The right of the plaintiffs to petition the defendants as a board, in the premises in question, is assured to them as legal electors of the county only, by § 2, p. 313 of Dassler's Stat. The official duty of the defendants to receive and count the names of the plaintiffs signed by them simply as legal electors, is enjoined upon the defendants by the above section. They, having refused to perform this duty, may by mandamus be compelled to perform it. The legal elector is not to be deprived of his voice in proceedings for relocating county seats, by the misconduct of an officer. (11 Kas. 321.)

The arbitrary refusal of an election board or register to take the vote of an elector is a common cause of action for the violation of an official duty, and the party injured has his remedy in damages. (1 Hilliard on Torts, 3d ed., 75, 137; 2 id., 3d ed., 270, and note; High on Ex. Legal Rem. 53, 54; 9 Ohio St. 568; 10 Pick. 333; 2 Cush. 100; 5 Nev. 369; Moses on Mandamus, 108.)

Mandamus lies to compel the return judges of an election to count the votes duly certified to them, and give a certificate in accordance therewith. (17 Mich. 427; 3 Kas. 95; 20 Pick. 484; 27 Ill. 242; 29 id. 419; 2 Ind. 423; 9 Ala. 338; 7 Bush, 523; 17 Ill. 167.) The writ lies, not only to compel action by such a board, but the court will also direct what returns shall be canvassed, and, when the law makes it their duty to do so, will compel the issue of a certificate of election to the person apparently entitled thereto. (39 Ind. 488; 29 id. 419; 20 Pick. 484; 3 Kas. 95.) The board of canvassers may by this process be compelled, not only to receive and count votes rejected by them, but also to canvass all the returns in their possession. (13 Fla. 55; 7 Iowa, 186; 7 Bush, 523; 2 Gray, 370; 39 Ind. 488.) County commissioners, as well as all other county officers, may be compelled by mandamus to discharge any ministerial function incident to their office which they unnecessarily neglect or refuse to perform, as to certify that the relator had a majority of votes cast for him for a certain office, although they have certified that another person had a majority; (2 Gray, 370; Moses on Mand.;) or they may thereby be compelled to designate a particular newspaper to do the county printing, when by law that paper is entitled thereto; (9 Hun, 60;) and when the omitted duty was required to be performed at the annual meeting, the writ goes to compel them to meet again and perform the duty, (8 N. Y. 317, 330; 13 Fla. 55,) and also to compel the board to restore certain names stricken from the assessment rolls. And where the violation of the duty affects particular parties only, and not the whole (as the whole assessment list), they may be compelled to exercise it by mandamus, although an action for dam-

ages may lie. (12 How. Pr. 224; 45 Barb. 135; 23 Wend. 458; 2 Barb. 398; 2 Hill, 45; 24 N. Y. 120; 12 Barb. 220; Moses on Mand. 108, 112.)

2. The plaintiff and those whose petitions or votes for the order were cast out, have the particular right, which they may protect and preserve in this action. (10 Kas. 9, 13, 14; Moses on Mand. 14.) The interest which is peculiar to the plaintiffs is sufficient, under the holdings of this court, to sustain the action. (6 Kas. 524; 11 id. 66; 5 id. 518. See also 91 U. S. 343; 3 Dillon, Ct. Ct. 515; 7 Iowa, 186; 41 Conn. 448.) The plaintiff may sue for himself and the other petitioners in the like situation. (Code, § 38; 12 How. 229.)

3. Since the alternative writ was allowed and served, the defendants have had abundant time to order and advertise the election: the peremptory writ will not now be denied for the reason only, that it would be fruitless for lack of time to advertise. The proceeding relates to its commencement, and defendants cannot consume the time by their own wrong, and then say, "It's too late." (46 Barb. 254, 258, 262; 66 N. Y. 608.) The fact that the board has completed its consideration of the matter, made its decision and adjourned, does not defeat the remedy. It may be compelled to reassemble and reconsider the petition, and count and allow the names of the legal petitioners. (13 Fla. 55; 3 Kas. 95; 14 id. 494.) If more than one election is required, and the final one cannot be had within the fifty days, nevertheless it is valid. (14 Kas. 381, 385, 491.) A formal demand and refusal are not necessary, especially as "the act required to be done is well known, and would have been performed already if the [majority of the board] party did not intend not to do it, and it belongs to no one to request it." (7 Iowa, 187, 202, 203; 41 Conn. 448; 18 Mich. 400, 413.)

The defendants will not be allowed, even if they had put the case, on considering the petition, upon the ground that the assessment rolls were some evidence, and all that was offered, upon the question of petitioners' right to do so, upon the mere inspection of the roll. (17 Mich. 427.)

This determination by the mere inspection of the said rolls, is no such judicial determination of the question as that the examination of it on mandamus is forbidden. (7 Hun, 303, 305; Moses on Mand. 55; 6 Pet. 661.)

Whether the face of the said rolls sheds light upon the question whether a person is an elector or not, is a question for the court, but if it tended to prove the question, then the sufficiency of the evidence might have been determined by the board, had they put it on that ground, and really and honestly opened the question as to the qualification of the petitioners, on the hearing; but the assessment rolls do not purport to be a list of electors.

This writ is not brought to determine the ultimate right, nor to conclude the question as to the names being genuine, or those of legal electors, but to determine the single step of adopting the assessment rolls as a test of their sufficiency for the purpose indicated, and of the rights of the petitioners. (7 Iowa, 186, 200.)

*F. A. Bettis*, for defendant:

1. The action cannot be maintained by and in the name of a private individual. (*Craft v. Comm'rs of Jackson Co.*, 5 Kas. 518; *Bobbett v. The State, ex rel. Dresher*, 10 Kas. 9; *Turner v. Comm'rs of Jefferson Co.*, 10 id. 16; *Linden v. Alameda Co.*, 45 Cal. 6; 67 N. C. 330.)

It does not answer to say that this is an action brought by Adkins to vindicate his right to petition, a right which he holds in common with all other members of society, and that to deny this right to him is a wrong to the state. If he suffers from its denial in some manner different from other members of the community at large, his remedy is an action for damages. The right of petition only goes to the extent of a right to present a petition without let or hindrance, and not that the prayer of the petition should be granted. It is true that in the case at bar the statute requires that if an aggregation of competent persons petition, the prayer shall be granted, but it will not be pretended that the rejection of

Adkins's petition alone would have given him a right of action. If, as shown by the writ, 1,000 other petitioners had not been rejected, he would have no cause of complaint, and consequently his right of action, if he has one, depends for its existence on a wrong done to another — an absurdity. His petition was presented and considered; here his private right was exhausted. The prayer of the petition was rejected; here the right of the public begins. What possible interest had Adkins in having a county-seat election ordered different from any other citizen of the state?

To entitle a party to a remedy by a writ of mandamus, "there must be a clear legal right, not merely to a decision in respect to the thing, but to the thing itself." (49 Barb. 42; 27 N. Y. 381; 25 Wend. 680; 19 Johns. 259; 11 How. 272; 34 Conn. 406.)

2. The writ does not disclose a cause of action in favor of plaintiffs. No demand is alleged. Where the right sought to be enforced is a private right, a demand must be shown. (17 Minn. 427.) Hence, if Adkins is allowed the writ on the ground that he has a private right or interest, he should show a demand.

It is not shown that a petition of three-fifths of the voters was sufficient upon which to order an election in Labette county, nor that an election has not been held in that county within five years. If an election had been held, then the board could not order another; and it matters not that the board should have given a wrong reason for a correct decision.

To entitle a party to the writ of mandamus, it must be made to appear that he has a legal right to have something done by the board to which he seeks to have the writ directed. (12 Barb. 217; 3 Col. 167; 12 Ga. 170; 11 Ind. 205; 25 Barb. 73; 1 Ohio St. 77; 11 Pa. St. 196; 1 Wend. 318; 2 Patt. & H. 38.)

The writ may only be used to put the body in motion, and not to direct its course, and therefore the question arises, whether in considering a petition for the relocation of the

county seat, the county board performs any other than a ministerial duty.

In Nebraska and other states, the writ will lie to compel the county board to pass upon a claim against the county, because there is no other remedy. But in Kansas, as also in Iowa, (5 Iowa, 380,) the writ will not lie in such a case, because there is another and a concurrent remedy.

In Nebraska, a case identically similar to the one at bar, was decided adversely to the mandamus, by the supreme court of that state. (4 N. W. Rep. 373.) See also 38 Wis. 554; 12 Kas. 616; 20 id. 506; 1 Denio, 644, 679; 13 Pet. 404; 35 Cal. 213; 14 Wall. 152.

I conclude:

1st. That the plaintiff has no more interest in a county-seat election than anybody else.

2d. That the right of petition, consisting in only the right to present a petition, has not in his case been infringed.

3d. That the only remedy for the infringement of the right of petition is an action to recover such damages as the party may have sustained thereby:

4th. That the matter prayed for affects the public alone, and therefore the state only can complain.

5th. That a plaintiff may only maintain an action for others similarly situated, when their rights are homogeneous and indivisible, and may not be adjudicated upon separately, and that therefore there is here a misjoinder of parties plaintiff. (11 Kas. 148; 18 Wis. 566; 19 id. 93; 15 Barb. 375; Story's Eq. Pl., §§ 97, 98, 107, 124, 168, 285; 9 N. W. Rep. p. 411.)

6th. That the county board acted within the scope of its authority and judicially, and that hence its doings may not be reviewed in this proceeding.

7th. That this court cannot determine for the board, who upon the petition were legal electors, and that the record shows that the board has already admitted and considered the petition of such as it found and determined, in the light of the evidence presented to it, to be "legal electors."

8th. That even if the board erred in its selection of evidence upon that point, this court cannot by mandamus correct the error.

9th. That the board committed no error, and therefore that the writ ought to be quashed.

*Per Curiam:* The motion to quash the alternative writ, issued in this case, is sustained, upon the authority of *Reedy v. Eagle,* ante, p. 254; *Bobbett v. The State,* 10 Kas. 9; and *Turner v. Comm'rs,* 10 Kas. 16.

Judgment for costs will therefore be duly entered against the plaintiff.