No. 30,757.

In re Application of ALBERT SCHOLL for Writ of Habeas Corpus; ALBERT SCHOLL, *Appellee*, v. BASIL HEUMPHREUS, Marshal of Cawker City, *Appellant.*

(14 P. 2d 656.)

Opinion filed October 8, 1932.

*C. M. Higley*, of Cawker City, for the appellant.
*Ralph H. Noah*, of Beloit, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment in a proceeding in habeas corpus.

It appears that on August 27, 1931, the petitioner, Albert Scholl, pleaded guilty in the police court of Cawker City to a charge of speeding in breach of the city ordinance. He was sentenced to pay a fine of one dollar and the costs of prosecution ($4.50) and ordered to be confined in the city jail until that sentence was satisfied. Accordingly the petitioner was held in the city jail from the 28th until the 31st of August. On September 1 he applied to the probate court for a writ of habeas corpus. In his application he set up the foregoing facts and alleged that he was ready and willing to work out his fine and costs as provided in R. S. 1931 Supp. 62-2109, but

that the city officials did not provide work whereby he might satisfy his sentence and thereby procure his discharge.

The city marshal made answer and return to the writ, setting up the fact that the fine and costs assessed against the petitioner had not been satisfied.

From some disposition of the proceeding in the probate court an appeal was taken to the district court. Evidence was presented, but no material dispute of fact appears. An *execution* had apparently been issued and returned unsatisfied. On it the following items were taxed:

"Judgment and costs............................................... $5.50

"Issuing execution, 15 cts; entering date of execution, 10 cts; entering return, 10 cts; filing execution, 5 cts; entering satisfaction of judgment, 10 cts; total............................................. .50
"City marshal's fees, service (first person)........................ .25

"5 days board .................................................. 4.45
"Jail keep 5 days............................................... 2.50
                                                                  _____
                                                                  $13.20"

It was shown that the petitioner was a young able-bodied man who was capable of doing manual labor and ready and willing to work out his fine and costs of prosecution, that he had demanded that privilege, and that the city had made no provision for furnishing work to its prisoners.

The district court held that the city could not be compelled to furnish employment for prisoners, but that it must give each prisoner who requested work a credit of $2 per day for every day he was kept in jail.

In its informal opinion the court said:

"Then the other question in the case, as to whether you can charge up costs in a criminal case, board bill for the man who is confined in jail, I don't believe you can; . . . they can't starve him to death while he is in there; they have got to feed him. You can't put a man in jail and not give him anything to eat. . . .

"They don't have to give them luxuries; . . . I don't believe that the charge of board, or the charge for the marshal for keeping jail or looking after it, things that occurred after the judgment was rendered against the defendant and he was sentenced, are proper charges; . . . I don't believe that it [the statute] is mandatory as far as the idea that the county [city] must furnish work; but it is mandatory, I think, that they must either furnish the work, or give the credit, when he is ready and willing and wants to work. So the writ will be allowed."

Judgment in favor of the petitioner was entered and the city marshal appeals.

The pertinent statute, in part, reads:

"Whenever any able-bodied male prisoner is confined in the county jail of any county or the jail of any town or city, having been convicted of a misdemeanor or of the violation of an ordinance of such town or city and being confined in punishment therefor, the sheriff of such county or the marshal or chief of police of such town or city shall, under the direction of the county commissioners or governing body of any city, compel such person to work at hard labor (8) hours of every working day; . . . Every male prisoner so employed on the roads or highways shall work out the fine and costs which has been imposed upon him at the rate of $2 per day for each day's work; . . . ." (R. S. 1931 Supp. 62-2109.)

This statute was enacted in 1927 (Laws 1927, ch. 238). It measurably modifies (if it does not altogether supersede) chapter 123 of the Session Laws of 1925 and whatever other earlier legislation cannot be consistently harmonized therewith. (*Arkansas City v. Turner,* 116 Kan. 407, 226 Pac. 1009.)

The trial court correctly held that the duty to provide work for able-bodied prisoners is not mandatory—at least it is not a duty which the petitioner or any private litigant can enforce. (*Bobbett v. State, ex rel. Dresher,* 10 Kan. 9; *Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651.) But we find no authority for the trial court's conclusion that a prisoner who is able and willing to work must be given credit therefor when the city has no suitable work or provides none for him to do. The statute does not say so, and the courts are not warranted in reading such a provision into its specific terms. It is only for labor actually performed that a prisoner is to be given credit upon his sentence. This point was settled in our recent case of *Cloud v. Horning,* 133 Kan. 763, 3 P. 2d 461; and it must be held here that the fact that the city had provided no employment whereby the petitioner could work out his fine and the costs of his prosecution did not entitle him to a statutory credit as for labor performed, and did not entitle him to his discharge.

Another error urged by the city marshal can be disposed of briefly. He contends that the trial court erred in its ruling that the city had no right to charge the petitioner for his board, nor for the services of the jailer. This contention is not good. There is no statute which authorizes the city to exact such charges; the right to

exact them is not inferrable from the city's grant of statutory powers, nor is such exaction warranted by R. S. 15-512 or R. S. 62-1904, cited by counsel for appellant. The same infirmity inheres in the items sought to be exacted for issuance and return of execution process and city marshal's fees. These were no part of the judgment and sentence imposed against the petitioner. The execution of a judgment and sentence for a breach of a city ordinance is by mittimus, not by distraint and forced sale of the defendant's goods as for debt. If the petitioner can be held in jail to reimburse the city for the expense of issuing execution process with *nulla bona* return, he could be kept in jail for life by issuing repeated executions and adding the expense thereby incurred to the amount of the fine and costs imposed on him by the sentence of the court. The police court properly sentenced the petitioner to pay a fine of one dollar and costs of prosecution taxes at $4.50, making a total of $5.50, and when the petitioner pays that sum he is entitled to walk out of the Cawker City jail a free man. On the legal questions involved in the city's additional charges against the petitioner for all items appended to the judgment and sentence, the trial court's ruling was eminently correct. But the petitioner had not yet satisfied the sentence lawfully imposed upon him. He is therefore not entitled to his discharge, and the judgment of the district court is therefore reversed with directions to remand the petitioner to the custody of the city marshal.

Reversed.