No. 41,931

WILLIAM M. ROWLANDS, d/b/a ROWLANDS COLLEGE BOOK STORE, *Appellant*, v. STATE OF KANSAS, BOARD OF REGENTS OF THE STATE OF KANSAS, and THE UNIVERSITY OF KANSAS MEMORIAL CORPORATION, a Corporation, *Appellees*.

(354 P. 2d 674)

Opinion filed August 4, 1960.

*Eugene C. Riling*, of Lawrence, argued the cause, and *John J. Riling*, of Lawrence, was with him on the briefs for the appellant.

*Robert E. Hoffman,* assistant attorney general, argued the cause, and *John Anderson, Jr.,* attorney general, and *A. K. Stavely,* assistant attorney general, were with him on the briefs for appellees State of Kansas, and Board of Regents of the State of Kansas.

*O. K. Petefish,* of Lawrence, argued the cause, and *C. C. Stewart* and *James L. Postma,* both of Lawrence, were with him on the briefs for appellee The University of Kansas Memorial Corporation.

The opinion of the court was delivered by

PARKER, C. J.: This is an action in which the proprietor of a privately-owned bookstore seeks to enjoin the State of Kansas, The Board of Regents of the State of Kansas, and the University of Kansas Memorial Corporation from operating a retail bookstore business in the Memorial Union Building.

The trial judge, in a memorandum, concluded that the State of Kansas and the Board of Regents were immune from the suit, and on behalf of the University of Kansas Memorial Corporation concluded that the plaintiff lacked legal capacity to maintain the action. The plaintiff has appealed from the judgment of dismissal.

Although the petition prays for injunctive relief, such relief would only be incidental. The allegations of the petition force the conclusion that the action is in the nature of *quo warranto* seeking to oust the defendants from exercising alleged unwarranted power. As the questions arise from motions to dismiss, the facts must be accepted as they appear in the allegations of the petition. The facts essential to the determination of the questions before us may be briefly stated.

The plaintiff is the owner and operator of a business known as the Rowlands College Store in Lawrence, Kansas. Located at the University of Kansas is a building, designated as the Memorial Union Building. The building and land on which the building is located is owned by the State of Kansas. The defendants own, operate and supervise all activities in the Memorial Union Building.

The defendants have established and are operating a retail bookstore business in the Memorial Union Building known as the Kansas Union Book Store. The Kansas Union Book Store buys at wholesale and sells at retail, for a profit, the same items of merchandise as, and in direct competition with, other businesses in Lawrence, Kansas, especially that of the plaintiff. The competitive articles sold are itemized in the petition and the number of full-time employees stated. Without presenting such facts in detail, it

should suffice to state that under the allegations of the petition, which must be accepted the defendants are carrying on such a business as is connoted by the term, "college book store."

The petition concludes "that the operation and carrying on of said retail business is in direct violation of Section 9, Article 11 of the Constitution of Kansas, which provides in part that 'The State shall never be a party in carrying on any work of internal improvement.'"

The defendants, the State of Kansas and the Board of Regents, appeared specially and moved to dismiss the action for the reason that the State of Kansas and the Board of Regents, which they claim is an arm of the state, are immune from suit in the absence of statutory consent, and that the court is without jurisdiction of the two defendants or the subject matter of the action.

The defendant, The University of Kansas Memorial Corporation, filed its motion to dismiss, stating among other reasons "That plaintiff's petition fails to allege any special injury or damage different in kind or nature from other persons belonging to the same class of which plaintiff is a part so as to authorize plaintiff to maintain said action."

We will first consider the plaintiff's legal capacity to maintain the action.

This court has stated on many occasions that an action to compel, restrain or question the exercise of power or authority by a governmental agency or public officer, can be brought only by the state with the attorney general or a county attorney as relator, or by an individual who shows an injury or interest specific and peculiar to himself, and not one he shares with the community in general. Our authority for this statement will appear as we discuss the more detailed question, as to whether or not the facts bring the plaintiff within the rule.

Whether or not a private individual has brought himself within the narrow limits of the well-established rule must be determined from the particular facts of each individual case. In considering the facts now before us and the precedents which control them, we will not be confined to cases dealing with actions in the nature of *quo warranto*. Cases dealing with mandamus and injunction proceedings adhere to the same principle.

See, *e. g., Miller v. Town of Palermo,* 12 Kan. (2nd Ed.) 14, where this court stated and held:

"Can private individuals, having no other interest than that of citizens, residents, and tax-payers of a supposed municipal corporation, maintain an action of *quo warranto* in their own names against such corporation, or must such action be brought in the name of the state, and by the attorney general or the county attorney? The district court decided that the action must be in the name of the state, and in that opinion we concur. This court has had occasion, in two or three cases, to consider under what circumstances grievances of a public character can be investigated at the suit of a private individual, and the rule has been thus laid down: 'If the injury .is one that peculiarly affects a person, he has his right of action; if it affects the whole community alike, their remedy is by proceedings by the state, through its appointed agencies.' *Craft v. Jackson Co.,* 5 Kan. * 521. That case was one of an application for an injunction to restrain the issue of some county warrants; but the rule thus enunciated is of general application. It was followed by this court in two mandamus cases. *Bobbett v. Dresher,* 10 Kan. * 9; *Turner v. Jefferson Co. Com'rs, Id.* * 16. And we see no reason why it should not be applied to cases like the one at bar. . . ." (pp. 15, 16.)

See, also, *Home Riverside Coal Mines Co. v. McAuliffe,* 126 Kan. 347, 267 Pac. 996, where it is said:

"Early in the history of this state it was determined that '. . . for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character . . .' (*Craft v. Jackson Co.,* 5 Kan. 518, 521; and see *Clark v. George,* 118 Kan. 667, 669, 236 Pac. 543.) This principle applies not only in injunction, but in mandamus (*Bobbett v. State, ex rel. Dresher,* 10 Kan. 9; *Collingwood v. Schmidt,* 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports." (p. 348.)

The specific allegations on which plaintiff must rely to sustain his position as a proper party plaintiff is quoted as follows:

"That said Kansas Union Book Store is a state owned retail business operated at a profit in competition with the business owned and operated by the above plaintiff and others, and that all of the items of merchandise sold by the Kansas Union Book Store are sold in direct competition with other businesses in Lawrence, Kansas, and especially that of the plaintiff."

As stated in *Gas Service Co. v. Consolidated Gas Utilities Corp.,* 145 Kan. 423, 65 P. 2d 584, this court has relaxed the rule somewhat. However, the Board of Regents and its statutory affiliated subsidiaries, who are responsible for the education of the youth of the state in necessarily congested areas; charged with supervision of their morals and social welfare, and carry the almost parental responsibility of finding suitable food and lodging for them, should not be subjected to litigation in the nature of *quo warranto* by every individual merchant, rooming house proprietor, restaurateur, or

bookshop owner, who desires to compete in furnishing accommodations or supplies. The rule has not been that far relaxed.

Student Union Buildings are statutory creatures conceived and fostered under the provisions of G. S. 1949, 76-6a01 *et seq.* The statute applies to all of the state's educational institutions located in six different cities in the state (G. S. 1949, 76-6a01). They must be sponsored by nonprofit corporations such as the defendant, The University of Kansas Memorial Corporation (G. S. 1949, 76-6a02). They are financed and maintained by a fee charged each student in the institution (G. S. 1949, 76-6a04). When the cost of construction is paid, the building and equipment becomes the property of the state (G. S. 1949, 76-6a03). The nature and extent of their use is a matter of general public interest.

We considered a quite similar question, to the one here involved, in *Dennis v. State Board of Barber Examiners,* 174 Kan. 561, 257 P. 2d 940. An action was brought by seventy-five percent of the practicing barbers of the thirty-first Judicial District to compel the State Board of Barber Examiners to make a personal investigation for the purpose of determining a proper price schedule for barber work. We state:

"The rule that private citizens without interest or rights distinct from those of other citizens cannot maintain an action in mandamus to compel public officials to perform their duty is well-established in this jurisdiction.

"Long ago in *Bobbett v. State ex rel. Dresher,* 10 Kan., we held:

" '*Mandamus* will not lie at the instance of a private citizen to compel the performance of a purely public duty.

" 'Such a suit must be brought in the name of the state, and the county attorney and the attorney general are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties.

" 'Where a private citizen sues out a *mandamus* he must show an interest specific and peculiar in himself, and not one that he shares with the community in general.' (Syl. ¶¶ 1, 2 and 3.)

"The principles announced in the foregoing decisions, although often times differently stated, have been repeatedly and steadfastly adhered to by this court down to and including our most recent decisions . . ." (p. 563.)

The many previous cases dealing with the question are set out in the opinion and will not be repeated here. On page 565 of the opinion we stated further:

"Nothing would be gained by laboring the allegations of the petition in the case at bar. It suffices to say that pleading shows upon its face that the plaintiffs are seeking to compel the defendants to proceed to perform certain alleged public duties under a statute enacted for the protection of the public welfare,

public health, and public safety in the exercise of the police power of the state, and that nowhere in such pleading does it appear that they have any interest in the subject matter in litigation different than that of the public generally. The fact they identify themselves in the petition as barbers in no way distinguishes them from other citizens in attempting to compel the defendants to comply with what they deem to be the requirements of a statute enacted for the purposes heretofore indicated. . . ."

In the *Dennis* case we leaned heavily on the opinion in the case of *Collinwood v. Schmidt,* 125 Kan. 81, 262 Pac. 556. The decision also controls this controversy. The court stated the facts in part as follows:

"This is an original proceeding in mandamus brought by an individual citizen, voter, taxpayer and wheat grower of Stanton county, against the members of the board of county commissioners for that county, to compel them to put into force and effect the township herd law, in certain townships of the county, in accordance with the prayer of petitions, alleged to have been signed by the requisite number of qualified electors in the respective townships, and to conform to the statutes in other respects (R. S. 47-101 *et seq.*), which were presented to defendants August 1, 1927. . . ." (pp. 81, 82.)

To those facts we applied the following rule of law:

". . . Defendants raise the point that plaintiff has no capacity to maintain this action for the reason that it seeks to require defendants to perform a public duty. The point is well taken and requires a dismissal of this action. (*Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651, and cases there cited.) Such an action should be brought in the name of the state on the relation of the attorney-general or the county attorney. No question of taxes is involved here. Plaintiff is one of many wheat growers who have sown wheat in the township in question. His interest in the question sought to be determined is no greater than that of other wheat growers in the townships, and collectively such interest of wheat growers is no greater than that of raisers of live stock. The duty sought to be compelled is a public duty in that it affects the public, in those townships, and is to be performed by public officers in their official capacity. The plaintiff has no interests to be protected or rights to be enforced that are so personal to him, as distinct from others, as to authorize him to maintain this action." (p. 82.)

We also direct attention to *Haines v. Rural High School Dist. No. 3,* 171 Kan. 271, 232 P. 2d 437.

The fact that the plaintiff identifies himself as a college bookstore merchant in no way distinguishes him from other citizens who may have an interest in the question. He classes himself with "other businesses in Lawrence, Kansas." Applying the rule to which this court has long adhered, it is clear that the plaintiff has no legal capacity to bring this action, and the motions to dismiss were properly sustained.

It having been determined that there is lack of a proper party plaintiff, it would serve no useful purpose to extend this opinion by a discussion of the question of sovereign immunity from actions in the nature of *quo warranto*. Neither should we concern ourselves with the plaintiff's suggestion that we determine by what warrant of right, if any, the defendants are engaging in a general bookstore business. This question can only be given proper consideration in a proceeding brought by a party who has the right to maintain it.

The judgment is affirmed.